| | |
|---|---|
| JERRY W. PHILLIPS, | ) |
| Petitioner, | ) |
| v. | ) No. 3:18-CV-00062-RLJ-HBG |
| RAYMOND BYRD, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner Jerry Phillips has pro se filed a petition for a writ of habeas corpus under U.S.C. §2254, challenging the constitutionality of his confinement under Campbell County convictions for four counts of aggravated sexual battery [Doc. 2]. After reviewing the parties' filings and the relevant state court record, the Court has determined that Petitioner is not entitled to relief under §2254, and no evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). For the reasons set forth below, the §2254 petition will be **DENIED**, and this matter will be **DISMISSED**.

### I. BACKGROUND

On July 6, 2009, a Campbell County grand jury indicted Petitioner for six counts of aggravated sexual battery following allegations that he sexually assaulted an approximately seven-year old victim over the course of several months. *State v. Phillips*, No. E2011-00674-CCA-R3-CD, 2012 WL 1143831, at *1 (Tenn. Crim. App. Apr. 5, 2012) ("*Phillips I*"). The evidence at Petitioner's trial primarily consisted of testimony by the victim, J.W.; the TCCA summarized the proof presented as follows:

> The minor victim in this case, J.W., was ten years old at the time of trial. J.W. testified that she currently lives with her aunt but that she had lived with her

parents. Before living with her parents, she had lived with her grandmother. When she lived with her parents, she would often go back to her grandmother's house to spend the night. Her grandmother's boyfriend, the Defendant, lived there with her grandmother. While staying at her grandmother's house, the Defendant touched J.W.'s "private parts" on several different occasions. The State asked J.W. to indicate on a diagram exactly where the Defendant touched her. J.W. indicated the "booby" area and "where she goes to pee" as the places where the Defendant touched her. She stated that the Defendant touched her "booby" with his hand and "where [she] pee[s]" with his tongue and hand.

J.W. testified regarding the specific incidents in which the Defendant inappropriately touched her. On one occasion, while living with her parents, she went over to her grandmother's house to visit. The Defendant asked her to go up to the attic with him and play with a race track. While playing with the race track, he began rubbing her breasts with his hand. Then he asked her to go into her uncle's room that was also located in the attic. Once in that room, he asked J.W. to lay on the bed, and he removed her pants and underwear. Then he placed his mouth "where [she] pee[s]." J.W. stated that she asked the Defendant to stop but that he did not stop until he saw from the window J.W.'s grandmother walking toward the house.

In another instance, J.W. and the Defendant were in a downstairs bedroom in the house, and J.W. was laying on her back on the bed. The Defendant pulled down her pants and underwear and rubbed "where [she] pee[s]" with his hand for "a couple of minutes." On that same day, the Defendant touched her breasts over her clothes.

J.W. also testified that on a different occasion she and the Defendant were sitting on the couch watching Care Bears. At one point, the Defendant unzipped his pants and asked J.W. to put her mouth "where he goes to pee." She did so "[f]or a second," then stopped. The Defendant asked her to do it again, but J.W. left to go play or watch television.

On yet another occasion, the Defendant and J.W. were in the backyard while her grandmother was at the store, and the Defendant set up a tent. The Defendant asked J.W. to come into the tent, at which point he pulled down her pants and underwear and put his mouth "where [she] go[es] pee." She stated that his tongue was "going around." J.W. did not tell her grandmother about these incidents because the Defendant told her not to tell anyone.

On cross-examination, J.W. acknowledged that there were some differences between her testimony at the preliminary hearing and at trial. J.W. testified at the preliminary hearing that, in the instance in the attic on the bed, she was sitting, and not lying, on the bed. She also stated that he used his hand over her clothes to touch "where [she] pee[s]," rather than his tongue with her pants and underwear pulled down. In reference to the incident in the downstairs bedroom, J.W. stated at the preliminary hearing that "he always touched me on top" of her clothes.

2

Additionally, she stated that, while on the couch, he touched her "where I go pee" with her clothes on, as opposed to her testimony at trial that he asked her to kiss "where he goes pee." Finally, regarding the incident in the tent, she acknowledged that her preliminary hearing testimony was that the Defendant touched her "privates" with his hand on top of her clothes. However, J.W. confirmed that her testimony given at trial was accurate and that it was hard for her to talk about these events.

The Defendant testified that he had known J.W.'s grandmother since 1978 and that the two of them had a son together in 1978. The Defendant had lived with J.W.'s grandmother as her boyfriend since July of 2004. When J.W. and her mother moved into J.W.'s grandmother's house in August of 2006, J.W. grew attached to the Defendant. Although the Defendant's relationship with J.W.'s mother started out well, it quickly deteriorated for various reasons. According to the Defendant, J.W.'s mother believed that the Defendant would expose an affair she was having, and she was angry with the Defendant for scolding her about her irresponsibility regarding J.W. J.W.'s mother moved out shortly after her falling out with the Defendant, and she made threats to the Defendant that she would send him back to the penitentiary. Because of those threats, the Defendant was careful not to be alone with J.W. when she came over to visit.

The Defendant further testified that he never touched J.W. inappropriately nor did he ever pull down J.W.'s pants or panties. When asked about the tent incident, the Defendant stated that he set up the tent one day but that the only time when he was in the tent with J.W., J.W.'s grandmother was there as well. He stated that there were other times when he held hands with J.W. or she would lay on the couch with her head in his lap but that he never touched her "in a sexual way."

J.W.'s grandmother testified that the Defendant had an amicable relationship with J.W.'s mother until the Defendant stopped giving money to J.W.'s mother. Defense counsel asked J.W.'s grandmother if it would have been possible for her to have been shopping while the alleged incidents occurred. J.W.'s grandmother denied that possibility because, at the time the events allegedly took place, her car was not working. Thus, the Defendant had to take J.W.'s grandmother shopping because he has a car with a manual gear shift that she does not know how to operate.

When the allegations arose regarding the Defendant, J.W.'s grandmother confronted J.W. and asked J.W. if the Defendant or anyone else ever touched her inappropriately, to which J.W. responded, "no." J.W.'s grandmother said that she never took showers while J.W. visited, and J.W. stayed in the living room while her grandmother went to the bathroom.

*Id.* at *1-3. At the close of proof, the trial court dismissed two counts of the indictment and the jury convicted Petitioner of the remaining four counts of aggravated sexual battery. *Id.* at *3. The

3

trial court merged counts two and three, because they occurred in the same place at the same time, and Petitioner was sentenced to eighteen years for each conviction which would run consecutively for a total effective sentence of fifty-four years [Doc. 9-5 p. 13, 32].

Petitioner filed a motion for new trial, challenging the sufficiency of the evidence, which was denied. *Id.* at *3. Petitioner then appealed to the Tennessee Court of Criminal Appeals ("TCCA") again challenging that the evidence was insufficient to support his convictions [Doc. 9-14], but the TCCA affirmed the trial court [Doc. 9-16]. *Id.* Petitioner's application to appeal this judgment to the Tennessee Supreme Court ("TSC") was likewise denied [Doc. 9-18].

Petitioner next filed a pro se petition for post-conviction relief in the convicting court, which was amended following the appointment of counsel and substitute counsel [Doc. 9-19 p. 3-20, 23-32, 36-43]. After a hearing, Petitioner's post-conviction petition was denied [*Id.* at 61-72]. Petitioner appealed the denial of post-conviction relief to the TCCA, raising claims of ineffective assistance of trial and appellate counsel [Doc. 9-25]. The TCCA affirmed the post-conviction court's ruling [Doc. 9-27] and the TSC denied discretionary review [Doc. 9-31]. *Phillips v. State*, No. E2016-01083-CCA-R3-PC, 2017 WL 3475529, at *1 (Tenn. Crim. App. Aug. 14, 2017) ("*Phillips II*").

Finally, Petitioner filed the instant petition [Doc. 2]. After Respondent filed an answer [Doc. 10], Petitioner first filed a motion for extension of time to file [Doc. 11], which was granted [Doc. 12], but then filed a motion to stay the case and hold in abeyance while he presented additional claims to the state courts [Doc. 13]. Before the Court's response, Petitioner filed one further motion for extensions of time to file [Doc. 15] and three motions to amend his petition

4

[Docs. 14[1], 23, 28]. Petitioner also filed his "PRELIMINARY STATEMENT in response" [Doc. 20]. The Court granted Petitioner's motion for extension of time to file insofar as Petitioner's response was considered timely [Doc. 21]. The Court denied Petitioner's motions to stay and amend, because the proposed amendments would be futile but instructed Petitioner to file a single amended petition in which he was only permitted to present claims that related back to his original petition [Doc. 29]. Petitioner filed a motion for relief from judgment [Doc. 30] and an amended petition [Doc. 32], which Respondent opposed [Doc. 31], and the Court denied [Doc. 33]. Petitioner filed an amended petition [Doc. 34] and Respondent filed a new answer [Doc. 35]. Petitioner then filed his reply [Doc. 36]. This matter is ripe for review.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in 28 U.S.C. §2254, prohibits the grant of habeas corpus relief for any claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). This standard is intentionally difficult to meet. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted). A district court may only grant habeas relief under the "contrary to" clause where the state court decides a question of law or materially indistinguishable set of facts conversely to the Supreme Court. *Williams v. Taylor*, 529 U.S. 362,

---

[1] Petitioner characterized this document as a motion for extension of time to file, however, in it he requested that the Court grant his amendment [Doc. 14].

5

405-06 (2000). The Court may only grant relief under the unreasonable application clause when the state court applied the correct legal principle in an "objectively unreasonable" manner, not when the state court's decision was simply erroneous or incorrect. *Id.* at 409 – 11; *Schriro*, 550 U.S. at 473. The AEDPA likewise requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In addition to the stringent standard for succeeding on the merits of a claim, the grant of habeas relief is further restrained by exhaustion requirements and the doctrine of procedural default. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In order for a claim to be considered on habeas review, the petitioner must first exhaust state remedies for that claim. 28 U.S.C. §2254(b)(1). Exhaustion requires a petitioner to "fairly present," each federal claim to all levels of the state appellate system, meaning he presented the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims," *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *see O'Sullivan*, 526 U.S. at 842. Tennessee has determined that presentation to the TCCA will satisfy the requirement of presentation to the state's highest court. Tenn. S. Ct. R. 39.

If a claim has never been presented to the highest available state court and is now barred from such presentation by a state procedural rule, that claim is procedurally defaulted and barred from federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Procedural default may also occur when a petitioner presented the claim to the highest court but the state court was prevented from "reaching the merits of the petitioner's claim" because petitioner failed to comply

6

with an applicable state procedural rule, which is regularly enforced and is an "adequate and independent" state ground. *Id.* (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977)).

### III. ANALYSIS

In the instant petition, Petitioner raises challenges to the sufficiency of the evidence and three challenges to the effectiveness of his counsel [Doc. 2; Doc. 34]. Specifically, with regards to ineffective assistance of counsel, Petitioner alleges that (1) trial counsel was ineffective for failing to object to the jury selection process; (2) appellate counsel was ineffective for failing to object to the jury selection process; and (3) post-conviction counsel was ineffective for not raising all issues presented on appeal [*Id.*]. Each of these will be discussed in turn.

#### A. Sufficiency of the Evidence

Petitioner challenges that the evidence is insufficient to support his convictions [Doc. 2 p. 5; Doc. 34 p. 5]. Specifically, Petitioner contends that the victim's testimony at preliminary hearings diverged significantly from her testimony at trial, which "resulted in [a] mutually exclusive set of facts," and thus rendered the evidence insufficient to sustain his convictions [*Id.*].[2]

---

[2] In his reply brief, Petitioner seems to challenge the sufficiency of the evidence based on several other theories which he did not raise in his original petition. First, he seems to allege that the TCCA incorrectly treated circumstantial evidence as direct evidence when weighing the sufficiency of the evidence, although the TSC had not yet ruled that it was permissible to do so [Doc. 36 p. 3]. He also appears to challenge that the testimony could only prove rape of a child rather than sexual battery of a child, as the victim testified that Petitioner placed his mouth and tongue on her genitals rather than his hands [*Id.* at 7]. Next, he claims a violation of double jeopardy because he "faced the charges" at his preliminary hearing, where he was "exonerated" and again at trial, where he was convicted [*Id.* at 7]. Lastly, Petitioner claims that trial counsel failed to object to the inconsistent testimony [*Id.* at 12]. These theories were not raised to the state court and are then procedurally defaulted. *See Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987) (holding that exhaustion requires the same claim be presented under the same theory to state courts).

Respondent, however, contends that the evidence is legally sufficient to support Petitioner's convictions [Doc. 10 p. 13-16]. Respondent alleges that a challenge to the consistency of the victim's testimony could only undermine the weight of her testimony or her credibility, which were questions left for the jury [*Id.*]. The Court agrees with Respondent and finds that the state court was not objectively unreasonable when it determined that the evidence was sufficient to support Petitioner's convictions.

To evaluate challenges to the sufficiency of the evidence, federal courts determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The courts look to the evidence supporting the conviction with specific reference to the elements of the crime as established by state law. *Id.* at 324 n. 16. However, because the trier of fact is charged with, and in the best position for, resolving conflicts in testimony, weighing the evidence, and drawing inferences, their verdict will be given deference. *Id.* at 319. As with ineffective assistance of counsel claims, challenges to the sufficiency of the evidence are incredibly difficult for petitioners to succeed on due to the double layer of deference granted to these claims. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). Not only is the trier of fact's verdict given deference, but under the AEDPA, the federal courts are tasked with deference to the state court of appeals' consideration of this verdict and may overturn it only if the state court was objectively unreasonable. *Id.*

On Direct Appeal, the TCCA applied *Jackson* and found that the evidence was sufficient to support Petitioner's convictions. *Phillips I*, 2012 WL 1143831, at *3. The TCCA first noted that under Tennessee law, aggravated sexual battery was defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim," if the victim was younger than thirteen.

8

Tenn. Code Ann. § 39-13-504(a)(4) (2006). *Id.* at *4. "Sexual contact" could include "the intentional touching of the victim's [or] the defendant's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's [or] the defendant's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). *Id.* The court then found that at trial the victim, who was only ten years old at the time, testified about four separate instances of sexual battery: (1) in the attic where Petitioner rubbed her breasts and pulled down her pants and underwear and placed his mouth "where [she] pee[s]," (2) in the downstairs bedroom where Petitioner pulled down her pants and underwear and rubbed "where [she] pee[s]" with his hand and touched her breasts over her clothes, (3) on the couch when Petitioner asked the victim to put his mouth "where he goes to pee," which she did, and (4) in a tent in the backyard when he pulled down her pants and underwear and put his mouth "where [she] goe[es] pee," and his tongue was "going around." *Id.* The court found that when viewing these facts with the "strongest legitimate view in favor of the State," there was "ample evidence" from which the jury could have found four instances of sexual contact sufficient to support sexual battery convictions. *Id.* It noted that while the victim acknowledged her testimony at trial differed from that at the preliminary hearing, where she indicated that Petitioner always touched her on top of her clothing, she also indicated that her testimony at trial was accurate and that it was difficult for her to talk about these events. *Id.* The court found that the question of a witness's credibility was for the jury and as the jury had convicted Petitioner, they obviously had credited the victim's testimony. *Id.*

      The Court cannot find that the TCCA's holding was either contrary to or an unreasonable application of federal law, nor that it relied on an unreasonable factual finding. The TCCA correctly identified the standard set forth in *Jackson* as the applicable law for sufficiency of the

9

evidence claims and applied the standard to the facts in Petitioner's case. *See Williams*, 529 U.S. at 406 (noting a "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within §2254(d)(1)'s 'contrary to' clause."). The victim, who was ten years old at the time of trial, testified to four instances during which Petitioner engaged in sexual contact with her by either touching her breasts or genital area with his hand or mouth or having her touch his genital area, and this alone was sufficient to support Petitioner's conviction. *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that "the testimony of a rape victim alone is sufficient to support a defendant's conviction"). As set forth above, this Court cannot reweigh credibility when evaluating a claim challenging the sufficiency of the evidence, and when viewing this evidence in the light most favorable to the prosecution, it was reasonable for the TCCA to find that the evidence was sufficient for a rational juror to find Petitioner guilty of sexual battery under Tennessee law. Petitioner has not introduced clear and convincing evidence to rebut the state court's factual findings. Regardless of the victim's previous inconsistent statements, the jury implicitly credited her in-court testimony when it convicted Petitioner.[3] This claim is then without merit and Petitioner is not entitled to relief.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel and appellate counsel were ineffective for failing to object to the jury selection process used prior to his trial and that his post-conviction counsel was ineffective for not raising all issues presented on appeal [Doc. 2; Doc. 34]. Respondent contends that these issues are meritless or otherwise not cognizable on habeas relief [Docs. 10, 35].

---

[3] The Court notes that under the Tennessee law defining "sexual contact" intentionally touching the clothing immediately covering the victim's intimate parts would also constitute sexual contact. The victim's prior testimony did not then directly contradict that Petitioner had engaged in sexual contact with her.

10

The Sixth Amendment entitles criminal defendants to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To successfully prove that counsel was constitutionally ineffective, a defendant must establish: (1) that counsel's performance was deficient such that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment," and (2) that counsel's "performance prejudiced the defense . . . so as to deprive the defendant of a fair trial" and undermine the reliability of trial results. *Id.* To prove deficiency, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Court should be deferential to counsel's performance and afford counsel a presumption that his actions were a result of "sound trial strategy." *Id.* at 689.

### a. Trial Counsel

Although his language is unclear, it appears that Petitioner alleges that his appointed trial counsel was ineffective for failing to object to the flawed jury selection process used at his trial, a claim he likewise raised in the state courts [Doc. 2 p. 7; Doc. 34 p. 6].[4] Respondent contends that although the jury selection process was later condemned by the TSC in another case, Petitioner has demonstrated neither deficiency nor prejudice on behalf of his trial counsel and is thus not entitled to relief [Doc. 10 p. 17-20]. The Court finds that Petitioner's trial counsel was not ineffective.

Petitioner's challenge stems from the trial court's deviation from Tennessee Rule of Criminal Procedure 24(d), which governs peremptory challenges during jury selection. Rule 24(d)

---

[4] Petitioner also cites to a page from the record containing the post-conviction court's order regarding his claim that trial counsel was ineffective for failing to object to the jury selection process [Doc. 9-19 p. 67], which supports the idea that he is attempting to raise the same claim.

11

sets out a process in which the court conducts an initial examination and seats a group of jurors who have not been excluded for cause, and then counsel for each party is permitted to exercise peremptory challenges. Tenn. R. Crim. P. 24(d)(1). After the first round of challenges, a replacement juror is to be seated for each removed juror "in the order of their selection" and examined for cause, and the parties again permitted to make peremptory challenges. Tenn. R. Crim. P. 24(d)(2)-(4). This method should be repeated until a full jury panel is selected. *Id.* However, at Petitioner's trial, the jury was not selected using this procedure. *Phillips II*, 2017 WL 3475529, at *1.

At Petitioner's post-conviction hearing, the trial judge who presided over Petitioner's trial testified regarding the jury selection procedures used instead. *Id.* He clarified that the court first seated a panel of eighteen jurors for voir dire and allowed each side to challenge for cause and use any of their peremptory challenges. *Id.* Then, the court moved the remaining venire members to the jury room and seated another eighteen prospective jurors who were questioned, after which the parties were allowed to challenge any of these jurors for cause, use their remaining peremptory challenges, or backstrike any of the jurors waiting in the jury room. *Id.* This process was repeated until enough jurors had been selected, or in the event too many jurors remained, the trial court randomly excused excess jurors. *Id.* The trial judge testified that this was the standard procedure used throughout all courts in his district and that he had used this method for "a number of years." *Id.* at *2.

Trial counsel testified that he was licensed to practice law in 1974 and had extensive experience in Campbell County, both as a general sessions court judge and in the public defender's office, where he was employed at the time of Petitioner's trial. *Id.* Trial counsel confirmed that he did not object to the jury selection process used at Petitioner's trial, because he had tried many

12

cases in that court where the above-described process was typical procedure. *Id.* Appellate counsel likewise testified that he did not raise a challenge to the court's deviation from Rule 24, because no one "thought it was an issue then." *Id.*

Several years after Petitioner's trial, after he filed the first version of his post-conviction petition, the TSC condemned the use of a jury selection process like the one used at Petitioner's trial. *See State v. Frausto*, 463 S.W.3d 469 (Tenn. 2015). Petitioner then amended his petition to include a claim that trial counsel was ineffective for failing to object to the jury selection process; but the post-conviction court denied Petitioner relief. Petitioner appealed this decision to the TCCA which found that counsel was not ineffective and rejected the claim. *Phillips II*, 2017 WL 3475529, at *14-19. The court noted that while the parties agreed that the condemned process was used at Petitioner's trial, *Frausto* was decided years after Petitioner's trial and expressly determined that the right to exercise peremptory challenges is not of state or federal constitutional dimension, meaning that Petitioner was not entitled to relief on any standalone claim. *Id.* at *14-18 (citing *Frausto*, 463 S.W.3d at 483).

The court then found that Petitioner's case was clearly distinguishable from *Frausto*, because counsel in *Frausto* was uninformed regarding the alternative process and ineffectively used his challenges, thus resulting in prejudice to the defendant. *Id.* at *18-19. In *Frausto*, counsel also objected repeatedly but was unable to call the trial judge's attention to Rule 24(d). *Id.* at *19-20. In contrast, the court found that here counsel was a veteran lawyer who practiced exclusively in this district at the time of trial and had been exposed to that procedure numerous times and was thus able to effectively conduct voir dire. *Id.* at *20-21. Thus, the court found that trial counsel's performance did not fall below an objective standard of reasonableness where he failed to object to common practice. *Id.* at *21. Moreover, although Petitioner contended that prejudice resulted

13

from the deviation alone, the court found that in *Frausto* the TSC was clear that reversal based on a deviation from Rule 24 is not automatic and Petitioner must still demonstrate prejudice. *Id.* at *22. The court found that as trial counsel was familiar with the selection process and not confused that Petitioner had not shown any prejudice. *Id.*

The Court cannot find that the state court unreasonably applied *Strickland* in determining that trial counsel's performance was neither deficient nor prejudicial. Although the process used did deviate from Rule 24, trial counsel's performance did not fall below an objective standard of reasonableness when he failed to divine that the TSC would one day condemn the use of the non-compliant jury selection procedure. *See Moore v. Mitchell*, 708 F.3d 760, 793 (6th Cir. 2013) (holding that "counsel must be competent, not clairvoyant [and that] failing to make a then-not-existent claim… was not deficient performance."); *United States v. Burgess*, 142 F. App'x. 232, 241 (6th Cir. 2005) (holding that there was no merit to an ineffective assistance of counsel claim which relied on counsel predicting federal court decisions which had not yet been issued). As to the prejudice resulting from the lack of objection, throughout his many amended petitions, Petitioner has never argued actual prejudice resulting from the deviation, instead claiming that he is entitled to relief based on the deviation alone. The Court cannot find that the state court was objectively unreasonable for finding that Petitioner was not prejudiced by counsel's lack of objection where counsel testified that he was familiar with the process and able to conduct voir dire effectively and where Petitioner has offered no evidence in contradiction. Petitioner is not entitled to relief on this claim.

### b. Appellate Counsel

Petitioner also challenges appellate counsel's lack of objection to the jury selection process discussed above [Doc. 2 p. 8; Doc. 34 p. 8]. Respondent, however, holds out that just as trial

14

counsel was not ineffective for failing to raise an unsuccessful challenge to the jury selection process, appellate counsel was likewise not deficient [Doc. 35 p. 21]. The Court agrees with Respondent.

The TCCA found that as Petitioner had again not shown any prejudice from the trial court's deviation from Rule 24 and appellate counsel's failure to object, he was not entitled to relief. *Phillips II*, 2017 WL 3475529, at *23. The Court cannot find that the TCCA's holding was objectively unreasonable. Petitioner has demonstrated neither deficiency nor prejudice, where counsel's decision not to challenge this issue was within reasonable professional norms and there is no indication that the failure to challenge the process resulted in prejudice to Petitioner, where the jury selection procedures had not yet been condemned. *See Moore*, 708 F.3d at 793. Petitioner is not entitled to relief.

### c. Post-Conviction Counsel

Lastly, Petitioner challenges the performance of post-conviction counsel by alleging that although he asked post-conviction counsel to raise all the issues presented to the lower court on appeal, counsel refused and thus waived the rest of Petitioner's issues without consultation or permission [Doc. 2 p. 10; Doc. 34 p. 10]. However, this is not a cognizable ground for relief. *See* 28 U.S.C. §2254(i); *Coleman*, 501 U.S. at 752 (providing that "[t]here is no constitutional right to an attorney in state post-conviction proceedings"). Because Petitioner has no right to counsel in state collateral proceedings, he has no right to the effective assistance of counsel and is thus not entitled to relief on this claim.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Docs. 2, 34] will be **DENIED** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

No reasonable jurist would find that the evidence was insufficient to support Petitioner's convictions, nor that Petitioner received ineffective assistance of counsel. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:

s/ Leon Jordan
United States District Judge